676 A.2d 607

ANTHONY D. ERRICO, AND HIS ASSIGNS, PLAINTIFFS–APPEL-LANTS–CROSS–RESPONDENTS, v. CITY OF JERSEY CITY, MAUREEN DOLCE, TAX COLLECTOR, AND HER PREDECES-SOR, ACTING TAX COLLECTOR, BETTY MCGRATH, REMEDI-ATION FINANCIAL, INC., LINCOLN PROPERTY, N.C., INC., DEFENDANTS–RESPONDENTS–CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 29, 1996—Decided May 30, 1996.

*Carmine R. Alampi,* argued the cause for appellants-cross-respondents (*Smith, Don, Alampi & D'Argenio,* attorneys; *Mr. Alampi,* of counsel; *Mark D. Madaio,* on the brief).

*Carol Zylbert,* Assistant Corporation Counsel, argued the cause for respondent-cross-appellant City of Jersey City (*Sean M. Connelly,* Corporation Counsel, attorney; *Ms. Zylbert,* on the brief).

*Eugene Paolino,* argued the cause for respondents-cross-appellants Remediation Financial, Inc. and Lincoln Property, N.C., Inc. (*Schumann, Hanlon & Panepinto,* attorneys, joined in brief of respondent-cross-appellant City of Jersey City).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

On November 22, 1994, defendant City of Jersey City (Jersey City) adopted a resolution authorizing the bulk sale of 102 tax sale certificates having an approximate face value of $4,400,000. Pursuant to this resolution, bids for the certificates were to include a

cash payment of at least 17.5% of the total lien amount and a note or other obligation of the purchaser for the remainder of the bid. The resolution further provided that the total compensation to be received by Jersey City could not fall below $3,080,000 and that the successful bidder would have the right to repurchase his/her note for not less than $25,000 plus 2.5% of the total lien amount.

In calculating the highest bid, the total value of each bid was not calculated by adding the cash and the face amount of the note together. Instead, the bidder was required to submit an amount for which he/she would be willing to buy back his/her note. This amount, plus the cash portion of the bid, represented the bid's total value for the purpose of determining the high bidder.

Plaintiff Errico submitted a bid of $880,000 cash and a $3,520,-000 note, as well as a proposed purchase price for the note of $88,000, representing a total bid value of $968,000. Thus, Errico's proposed purchase price for his note fell below the minimum of $135,000 (2.5% of the total lien amount, plus $25,000) required by the ordinance. In addition, Errico submitted no interest rate or term for the note.

Remediation Financial, Inc. and Lincoln Property, N.C., Inc. (hereinafter Remediation) submitted a bid of $800,000 cash and a $2,310,000 note, as well as a proposed purchase price of $135,000 for the note, representing a total bid value of $935,000. The City Council of Jersey City voted to accept Remediation's bid, which it found to conform to the terms and conditions of the sale.

Errico subsequently filed this suit seeking a declaration that he was the high bidder and an order that Jersey City rescind the sale of the tax certificates to Remediation. After hearing argument, Judge D'Italia expressed concern over the entire bid process, particularly the indication from the evidence that the city wanted a firm commitment by the purchaser to buy back the note simultaneously with the sale. After the judge expressed these concerns, the city's bond counsel responsible for drafting the notice of sale expressly stated that the city's intent was to have the purchaser

immediately buy back the note and that the buy-back was to be an absolute condition of the sale.

After hearing further argument on a subsequent date, Judge D'Italia issued an oral opinion which concluded that Errico's bid failed to include required terms, such as the interest rate and maturity date of the note, which would ordinarily make it nonconforming, but that the note was not a material part of the particular transaction, making the omissions immaterial. The judge further held that the whole bidding process was an improper attempt to circumvent the requirement of *N.J.S.A.* 54:5–113.1(b) that tax sale certificates may not be sold for less than 70% of their face value, and consequently that neither Errico, Remediation, nor any other bidder could properly be awarded the certificates. Judge D'Italia gave a detailed statement of his reasons for reaching this conclusion:

> Significantly the notice requires bidders to bid the amount they will pay to buy back their note on the date of the closing with the minimum amount of the repurchase to be $135,000.00. The transaction is structured so as to appear to give bidders an option to purchase their note at the closing. The reality, however, is that the bidders were required to bid the amount of cash for which they would buy back their notes and all parties agreed that the buy back was mandatory.
>
> In other words the winning bidder was to be the person who submitted the highest cash plus the highest cash value for the note. The buy back of the note by the winning bidder is to occur at the closing as one single transaction. The city never contemplated keeping the note. The bidders likewise understood that this was really an all cash deal structured in two steps. The reason for the two step approach is also not disputed. The land covered by these lands is environmentally contaminated. The value of most of the parcels is apparently less than the amount of the tax liens. The city recognized that no bidder would pay either the face value of the liens nor even bid the minimum seventy percent statutory requirement given the potential liability for clean up costs. The city wants to avoid the impact of the statute by giving a deeper discount than the statute 54:5–113.1 permits without having to go through the process of reassessing each parcel. The two step structure is a device struck upon by the city to accomplish this. The bidder is required to bid cash plus a note in an amount which totals seventy percent of 4.4 million dollars as required by the statute but the bidder will then exercise the right to buy back the note at a discount.
>
> . . . .
>
> The note principal amount is an artificial ingredient designed to pass statutory muster by presenting a total bid which facially is more than seventy percent of the face amount of the liens.

> The right[,] and [in] fact as understood by all parties, the obligation of the bidder to buy back the note simultaneous with the purchase of the certificates, makes the buy back price plus the cash the true amount of consideration and that is what was really considered by the city in awarding the bid.
>
> . . . .
>
> The entire bid process is contrary to the requirements of 54:5–113.1 and cannot be allowed to stand. Remediation was awarded the bid based upon a total cash offer of $935,000.00 which represents its initial cash plus the amount for which it would buy back its note. This is substantially less than $3,080,000.00 which is seventy percent of the face value of the tax certificates. It represents buying these tax sale certificates for approximately twenty one percent of the face value. The bid of the plaintiff of $968,000.00, while higher, is equally defective for the same reason. It falls far short of the minimum seventy percent requirement of the law.
>
> . . . .
>
> This bid was structured with the note as an illusory obligation because in the real world nobody would bid—would offer notes and cash totalling seventy percent if they had any risk that the city would opt to hold onto the notes. The city's objective is clearly a worthy one. . . . [I]ts interest is in having these properties become performing from the standpoint of payment of taxes and to accomplish if possible environmental cleanups. However, the statute stands clearly in the way of the city achieving its objective and the court cannot countenance a total fiction to avoid the legislative mandate.

Accordingly, the judge entered final judgment ordering rescission of the award of the tax lien certificates to Remediation and enjoining Jersey City from executing any contract pursuant to the invalidated bid invitation.

Plaintiffs, Remediation and Jersey City have all filed appeals from the judgment. All parties argue that Judge D'Italia erred in concluding that the terms and conditions of the bid invitation were inconsistent with *N.J.S.A.* 54:5–113.1. In addition, Remediation and Jersey City argue that the judge erred in concluding that Errico's bid conformed with those terms and conditions.

We affirm substantially for the reasons expressed in Judge D'Italia's oral opinion. We add the following supplemental comments.

*N.J.S.A.* 54:5–113 provides in pertinent part that:

> When a municipality has or shall have acquired title to real estate by reason of its having been struck off and sold to the municipality at a sale for delinquent taxes and assessments, the governing body thereof may by resolution authorize a private sale of the certificate of tax sale therefor, together with subsequent liens thereon,

for not less than the amount of liens charged against such real estate, except as provided in [*N.J.S.A.* 54:5–113.1].... When the total amount of the municipal liens shall ... exceed the assessed value of the real estate ..., the certificates, together with subsequent liens thereon, may be sold and assigned for a sum not less than such assessed value.

*N.J.S.A.* 54:5–113 was enacted to give a municipality flexibility by allowing it to sell tax sale certificates in a private sale for "not less than the amount charged against such real estate" or, when the liens exceed the assessed value of the property, for such assessed value. *Dvorkin v. Township of Dover,* 29 *N.J.* 303, 310–311, 148 *A.*2d 793 (1959) (quoting *N.J.S.A.* 54:5–113).

*N.J.S.A.* 54:5–114.1 and 54:5–114.2 were enacted to give a municipality even greater flexibility in situations "where the amount of the liens and the assessed value of the property both [exceed] the fair market value of the property." *Dvorkin v. Township of Dover, supra,* 29 *N.J.* at 311, 148 *A.*2d 793. *N.J.S.A.* 54:5–114.1 provides in pertinent part that:

In addition to any method now provided by law the governing body of any municipality may sell any certificate of tax sale held by such municipality by one of the following methods, ... tax sale:

(a) At public sale to the highest bidder.

(b) The governing body may from time to time determine by resolution the certificates of tax sale held by [it] which [it] will agree to sell for an amount lower than the amount due on each such certificate of tax sale. After such determination the municipality shall give public notice ... stating in substance that the municipality will receive bids for any such certificate of sale, not including any municipal liens subsequent thereto.... [T]he governing body may accept or reject any such bid ... or may ... accept or reject any higher bid which may then be made ... by any person.

*N.J.S.A.* 54:5–114.2 is substantially the same as *N.J.S.A.* 54:5–114.1, except that *N.J.S.A.* 54:5–114.2 allows the municipality to sell or assign the tax sale certificate, including subsequent municipal liens, while *N.J.S.A.* 54:5–114.1 specifically excludes subsequent municipal liens. *Dvorkin v. Township of Dover, supra,* 29 *N.J.* at 311, 148 *A.*2d 793. The purpose of *N.J.S.A.* 54:5–114.1 and *N.J.S.A.* 54:5–114.2 is clearly set forth in the introducer's statement to *N.J.S.A.* 54:5–114.1, which reads:

When the assessment on the land covered by the certificate and the amount necessary to redeem the certificate both exceed the value of the land, so far as the

purchaser is concerned, the municipality is unable to dispose of the certificate under our present law. The two methods provided by this bill will give further opportunity for disposal of such tax sale certificates held by municipalities in such case.

[*Sponsor's Statement to Senate Bill No. 146, L.* 1941, *c.* 232 (1941).]

Thus, these two sections authorize the assignment of tax sale certificates for an amount less than the amount of the tax liens or the assessed value of the property, with the objective of returning the property to the tax rolls. *Dvorkin v. Township of Dover, supra,* 29 *N.J.* at 311, 148 *A.*2d 793.

We also note that a purchaser under *N.J.S.A.* 54:5–114.1 or *N.J.S.A.* 54:5–114.2 acquires a far more qualified right than a purchaser under *N.J.S.A.* 54:5–113 or *N.J.S.A.* 54:5–113.1. See *Dvorkin v. Township of Dover, supra,* 29 *N.J.* at 312, 148 *A.*2d 793. For example, *N.J.S.A.* 54:5–114.4 requires a purchaser to redeem the tax sale certificate within two years. If the purchaser fails to do so, the municipality may refuse to reimburse the purchaser for monies he/she paid for the certificate and for subsequent taxes upon the land if the true landowner then chooses to redeem. *N.J.S.A.* 54:5–114.6. The restrictions contained in *N.J.S.A.* 54:5–114.4 and *N.J.S.A.* 54:5–114.6 only apply, however, to certificates purchased under *N.J.S.A.* 54:5–114.1 and *N.J.S.A.* 54:5–114.2, not to certificates purchased pursuant to *N.J.S.A.* 54:5–113 or *N.J.S.A.* 54:5–113.1. *Gasorek v. Gruber,* 126 *N.J.Super.* 511, 516, 315 *A.*2d 706 (App.Div.1974).

The invitation to bid for tax sale certificates involved in this litigation arose from the precise kind of situation that *N.J.S.A.* 54:5–114.1 and *N.J.S.A.* 54:5–114.2 were designed to address— where the assessed value of the land and the amount required to redeem the tax certificate exceed the actual value of the land. However, counsel indicated at oral argument that Jersey City had elected not to use the procedures set forth in *N.J.S.A.* 54:5–114.1 and *N.J.S.A.* 54:5–114.2, because those procedures do not authorize the bulk sale of tax certificates, and some of the properties involved in the subject sale are so contaminated that the tax certificates would be saleable only as part of a bulk sale that

includes other, more desirable properties. Since this issue has not been briefed, we express no opinion as to whether the bulk sale of tax certificates would be permissible under *N.J.S.A.* 54:5–114.1 and *N.J.S.A.* 54:5–114.2. However, even if *N.J.S.A.* 54:5–114.1 and *N.J.S.A.* 54:5–114.2 do not authorize the bulk sale of tax certificates, this still would not provide a justification for Jersey City agreeing to allow the successful bidder to repurchase his or her note at a small fraction of its face value in order to circumvent the requirement of *N.J.S.A.* 54:5–113.1 that the principal amount of the note, together with the other consideration, must total "not ... less than 70% of the total amount of the liens charged against the real estate." If the present statutes governing the sale of tax sale certificates are inadequate in the circumstances presently confronted by Jersey City, the solution must rest with the Legislature.

Affirmed.